**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO. 0:25-cv-61191-DIMITROULEAS/LETT**

**CRISTIE OTERO**,

Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,
*Frank Bisignano*,

Defendant.
_______________________________________/

**REPORT AND RECOMMENDATIONS ON MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court upon the Honorable William P. Dimitrouleas' Order of Referral to Magistrate Judge, referring this case to the Undersigned for appropriate disposition or report and recommendation. *See* ECF No. 9. Having reviewed Plaintiff Cristie Otero's Motion for Summary Judgment, ("Plaintiff's Motion"), [ECF No. 15], Defendant Frank Bisignano Commissioner of Social Security's Motion for Summary Judgment, ("Defendant's Motion"), [ECF No. 17], the record and relevant legal authorities, and being fully advised in the premises, the Court recommends as follows:

## BACKGROUND

Cristie Otero ("Plaintiff" or "Ms. Otero") appeals the Social Security Administration's denial of her claim for Title XVI Supplemental Security Income of the Social Security Act. *See generally* Compl., ECF No. 1; Pl. Mot. at 1. Plaintiff originally filed her application on March 8, 2021, alleging a disability onset date of March 11, 2019. Pl. Mot. at 1. Her application was denied initially on July 14, 2021, and upon reconsideration on December 9, 2021. *Id.* Hearings were held before Administrative Law Judge Laura Bernasconi (the "ALJ") on January 3, 2024, and May 14, 2024. *Id.* at 2. Plaintiff, her attorneys, and an impartial vocational expert participated in the hearings. *Id.*

Following the hearings, the ALJ issued a decision finding Plaintiff was not disabled. Administrative Record (the "Admin. R.") at 28. Specifically, the ALJ concluded:

- Plaintiff has not engaged in substantial gainful activity since March 8, 2021, the application date.

- Plaintiff has the following severe impairments under 20 CFR 416.920(c)): migraines; cervical and lumbar degenerative disc disease with cervical and lumbar radiculopathy; left knee internal derangement status post surgical intervention; left shoulder rotator cuff tendinitis; and a right arm injury status post surgery.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

- Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except that she can never climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance, stoop, crouch, crawl, and kneel. She cannot operate foot pedals with the left lower extremity. She cannot work at

unprotected heights or around dangerous machinery. She can use the right upper extremity for frequently handling, grasping and reaching in all directions.

- Plaintiff is unable to work her past relevant work.

- Pursuant to SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

- Plaintiff was 42 at the time her application was filed, and she is therefore defined as a younger individual under 20 CFR 416.963. Plaintiff has at least a high school education, 20 CFR 416.964.

- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See* 20 CFR 416.969 and 416.966a.

- The claimant has not been under a disability, as defined in the Social Security Act, since March 8, 2021, the date the application was filed per 20 CFR 416.920(g).

Admin. R. at 18-28.

Thereafter, Plaintiff requested Appeals Council review which was denied on May 6, 2023. Pl. Mot. at 2. Having exhausted her administrative remedies, Plaintiff's case became ripe for review under 42 U.S.C. § 405(g) and § 1383(c)(3). Compl. ¶ 1. Plaintiff filed her Social Security Complaint with this Court on June 12, 2025. ECF No. 1. The Administrative Record from the Social Security Administration was filed on the docket on August 12, 2025. ECF No. 10.

On December 10, 2025, Plaintiff filed her Motion for Summary Judgment, [ECF No. 15], wherein she argues that the ALJ erred by failing to properly evaluate the opinions of Lisa Daley, M.D. and Micheal Hearns, M.D. Pl. Mot. at 1.

On January 8, 2026, Defendant filed his Motion for Summary Judgment, [ECF No. 17], wherein he argues that the ALJ properly evaluated the medical opinion evidence and substantial evidence supports the ALJ's evaluation of that evidence. Def. Mot. at 6. On January 22, 2026, Plaintiff filed her Response in opposition to Defendant's Motion for Summary Judgment, ( "Plaintiff's Response"). ECF No. 18.

**MEDICAL EVIDENCE**

Relevant Medical Record

Plaintiff previously worked as a bus driver and was involved in an accident at work on March 11, 2019, resulting in neck, back shoulder, and left knee injuries Admin. R. at 612. She saw a number of physicians during the relevant period in support of her subsequent worker's compensation claim. On March 21, 2019, imaging of Plaintiff's lumbar spine showed L4-L5 disc bulge and L5-S1 disc bulge. *Id.* at 755.

On April 2, 2019, imaging of Plaintiff's cervical spine showed central disc herniation impressing on the thecal sac at C3-C4; right paracentral/central disc herniation impressing on the thecal sac at C4-C5; broad-based central disc herniation, annular disc bulge and bilateral uncovertebral spurring impressing on the thecal sac with mild central canal stenosis and bilateral neural foraminal narrowing at C5-C6; broad-based central disc herniation impressing on the thecal sac at C6-C7; and straightening of cervical lordosis. *Id.* at 791-92. Imaging of Plaintiff's left shoulder showed diffuse tendonitis involving the supraspinatus tendon, and mild to moderate impingement of the supraspinatus outlet. *Id.* at 793.

On April 25, 2019, an EMG study of Plaintiff's lumbar and cervical spine showed electrophysiological evidence consistent with left C5-C6 and C6-C7-C8 radiculitis as well as L3-L4, L5-S2, and S1-S2 radiculopathy. *Id*. at 827.

On August 2, 2019, Plaintiff received bilateral L5-S1 transforaminal epidural steroid injections to treat lumbar herniated disc with radiculopathy. *Id*. at 660. Plaintiff also received bilateral lumbar paraspinal and gluteal muscle myofascial trigger point injections. *Id*. at 663.

On August 16, 2019, Plaintiff received an epidural steroid injection at C7-T1 to treat cervical herniated disc with radiculopathy. *Id.* at 653. Plaintiff also received bilateral cervical paraspinal and trapezius muscle myofascial trigger point injections. *Id*. at 655. These procedures were repeated on October 4, 2019, *see id.* at 723, 726, and November 1, 2019. *Id*. at 705, 708.

On February 7, 2020, Plaintiff presented to Lisa Daley, M.D. with neck, back, left knee, and left shoulder injury. *Id*. at 629. Dr. Daley reviewed imaging of Plaintiff's cervical spine which showed herniated discs at C3-4, C4-5, C5-6 and C6-7; lumbar spine imaging showing L4-5 disc bulge and LS-S1 disc bulge; and left shoulder imaging showing tendinitis of the supraspinatus tendon. *Id.*. Upon examination, Dr. Daley documented positive muscle spasm and muscle tenderness to palpation of the cervical and lumbar paravertebral muscles with positive cervical compression and straight leg raising tests; painful left knee range of motion with tenderness to palpation over the medial joint line on the left side; painful left shoulder range of motion with positive Neer and Hawkins tests; and 4/5 strength in the left shoulder

and knee with an antalgic gait. *Id*. at 630. Dr. Daley assessed cervical and lumbar disc derangement with radiculopathy, left knee internal derangement, and left shoulder rotator cuff tendonitis. *Id*. She opined Plaintiff could lift less than 10 pounds and was limited in her ability to push, pull, carry, sit, stand, walk, climb, kneel, bend, reach, and perform repetitive motion. *Id*.

On March 3, 2020, Plaintiff presented to Dr. Ruth P. Solomon, M.D. with normal range of motion in her back and pain with active range of motion and requiring a cane or walker. *Id*. at 523.

On April 9, 2020, Plaintiff presented to Micheal Hearns, M.D. for pain of the neck, lower back, left shoulder, left arm, and left knee. *Id.* at 614. She reported weakness in her left hand, a clicking sensation in the left knee, and left shoulder/knee pain with increased activity. *Id.*. Upon examination, Dr. Hearns documented multiple trigger points in the center neck; a clicking sensation in the left shoulder with reduced internal rotation (70 degrees); a clicking sensation in the left knee with positive patellar grind test; and multiple trigger points and muscle spasms in the lower back with limited extension (5 degrees) and flexion (90 degrees). *Id.* at 616. Dr. Hearns diagnosed sprain to the neck, lower back, left shoulder, and left knee; herniated disc of the neck; bulging disc of the lower back; cervical and lumbar radiculopathy; and left shoulder tendonitis. *Id.*. He opined Plaintiff was limited in lifting, pushing, pulling, standing, walking, turning, bending, and stooping, and could lift 5 to 10 pounds. *Id.*.

On August 25, 2020, imaging of Plaintiff's left knee showed lateral patellar tilt,

subluxation and patellofemoral chondromalacia with narrowing of the lateral aspect of the patellofemoral compartment; insertional tendinosis of the quadriceps with heterogeneous intrasubstance signal abnormality approaching the distal insertion; synovial fluid effusion within the knee joint; and small popliteal fluid collection within the medial gastrocnemius/semimembranosus bursa which dissects inferiorly along the medial margin. *Id.* at 618.

On September 11, 2020, Plaintiff presented to Dr. Daley for persistent left knee pain. *Id.* at 623. Upon examination, Dr. Daley noted positive muscle spasm and muscle tenderness to palpation of the cervical and lumbar paravertebral muscles with positive cervical compression and straight leg raising tests. *Id.* at 624. She further noted painful left knee range of motion with tenderness to palpation over the medial joint line on the left side. *Id.* Dr. Daley also noted painful left shoulder range of motion with positive Neer and Hawkins tests. *Id.* Plaintiff also exhibited 4/5 strength in the left shoulder and knee with an antalgic gait. *Id.* Dr. Daley assessed cervical and lumbar disc derangement with radiculopathy, left knee internal derangement, and left shoulder rotator cuff tendonitis. *Id.* She opined "[n]o heavy lifting [sic] pushing, pulling, driving of bus, operation of machinery, no kneeling crawling climbing bending [sic]. Weight limit less than 10 pounds." *Id.* at 625.

On May 21, 2021, Plaintiff presented to Dr. Daley for continued lower back pain, neck pain, left shoulder pain, and left knee pain. *Id.* at 639. Upon examination, Dr. Daley documented positive muscle spasm and muscle tenderness to palpation of the cervical and lumbar paravertebral muscles with positive cervical compression and

straight leg raising tests; painful left knee range of motion with tenderness to palpation over the medial joint line on the left side; painful left shoulder range of motion with positive Neer and Hawkins tests; and 4/5 strength in the left shoulder and knee with an antalgic gait. *Id*. at 640. She confirmed her prior assessments of cervical and lumbar disc derangement with radiculopathy, left knee internal derangement, and left shoulder rotator cuff tendonitis. *Id*. Dr. Daley opined Plaintiff could lift less than 10 pounds and could perform no heavy lifting, pulling, driving of buses, operation of machinery, kneeling, crawling, climbing, or bending. *Id*. at 641.

On May 27, 2021, Plaintiff presented to Dr. Laiping Xie, M.D. where negative straight leg raise testing demonstrated normal strength, normal range of motion of the spine, and did not need a cane or a walker upon examination. *Id*. at 470-71.

In July 2021, Plaintiff presented to Christine Pak, RPA-C and had intact range of motion in all extremities and a steady gait. *Id*. at 483.

On July 15, 2022, imaging of Plaintiff's lumbar spine showed L1-L2 posterior annular disc bulge deforming the ventral thecal sac; L4-L5 grade 1 anterolisthesis and posterior annular disc bulge deforming the ventral thecal sac and annular tear extending into the right neural foramen; facet hypertrophic changes at L4-L5 and L5-S1; and curvature of the lumbar spine convex to the right. *Id*. at 1118-19.

In June 2022, Plaintiff had a normal gait with no assistive device, negative straight leg raise testing, normal sensation, and full strength in her upper and lower extremities, despite decreased range of motion in her left knee *Id*. at 734-35. An April 2023 examination revealed similar findings *Id*. at 1169-70.

On June 29, 2023, Plaintiff received a cervical epidural steroid injection at C5-C6 to treat cervical disc herniation with radiculitis. *Id*. at 1133.

On November 8, 2023, imaging of Plaintiff's left shoulder showed distal anterolateral supraspinatus tendinosis/tendinopathy; hypertrophic change in the acromioclavicular joint extending to abut the supraspinatus; and Distal anterolateral subscapularis tendinosis/tendinopathy. *Id*. at 1130-31.

On January 9, 2024, Plaintiff presented to Central Medical Services of Westrock for pain of the neck, left shoulder, and left knee. *Id*. at 1295. Plaintiff reported she suffered a workplace injury on March 11, 2019. *Id*. She had difficulty with prolonged standing and sitting due to left knee pain. *Id*. Upon examination, Plaintiff was observed to moderate to diffuse tenderness of the left shoulder with decreased flexion (135 degrees), abduction (130 degrees), internal rotation (70 degrees), and external rotation (90 degrees). *Id*. at 1296. Mild tenderness was noted in the left knee with decreased flexion (100 degrees) and extension (10 degrees). *Id*. Positive tenderness was noted at C4-C5-C6 and along the paraspinal muscles bilaterally at C4 and C5. *Id*. Plaintiff exhibited reduced cervical flexion (30 degrees), extension (15 degrees), and bilateral rotation (50 degrees). *Id*. Also noted were positive cervical compression test and positive Soto Hall. *Id*. Plaintiff also exhibited positive tenderness at L4-L5 and S1 as well as along the paraspinal muscles bilaterally at L4 and L5. *Id*. Also noted was reduced lumbar flexion (45 degrees), extension (15 degrees), and bilateral trunk rotation (20 degrees). *Id*. Plaintiff also exhibited positive straight leg raising bilaterally at 10 degrees. *Id*. The examiner

assessed cervical sprain/strain, left shoulder sprain/strain, lumbar herniated disc, and left knee meniscal tear – status post arthroscopy. *Id.*

<u>Medical Opinion Evidence at Issue</u>

<u>*Lisa Daley M.D. (2/7/2020 - 5/21/2021)*</u>

Over the course of multiple examinations from February 2020 to May 2021, Dr. Daley provided many opinions on the functional limitations caused by Plaintiff's physical impairments. Admin. R. Ex. 7-F, 14-F. On February 7, 2020, Dr. Daley opined Plaintiff could lift less than 10 pounds and was limited in her ability to push, pull, carry, sit, stand, walk, climb, kneel, bend, reach, and perform repetitive motion. *Id.* at 630. In the examination leading to the initial February 2020 opinion, Dr. Daley reviewed imaging of Plaintiff's cervical spine which showed herniated disc at C3-4, C4-5, C5-6 and C6-7; lumbar spine imaging showing L4-5 disc bulge and LS-S1 disc bulge; and left shoulder imaging showing tendinitis of the supraspinatus tendon. *Id.* at 629. Upon examination, Dr. Daley documented positive muscle spasm and muscle tenderness to palpation of the cervical and lumbar paravertebral muscles with positive cervical compression and straight leg raising tests; painful left knee range of motion with tenderness to palpation over the medial joint line on the left side; painful left shoulder range of motion with positive Neer and Hawkins tests; and 4/5 strength in the left shoulder and knee with an antalgic gait. *Id.* at 630.

On May 15, 2020, Dr. Daley opined that the Plaintiff was limited in lifting,

standing, walking, climbing, kneeling, bending, reaching, and repetitive motion, and could lift less than 10 pounds. *Id*. at. 622.

In September 2020, Dr. Daley noted positive muscle spasm and muscle tenderness to palpation of the cervical and lumbar paravertebral muscles with positive cervical compression and straight leg raising tests. *Id*. at 624. She further noted painful left knee range of motion with tenderness to palpation over the medial joint line on the left side. *Id*. Dr. Daley also noted painful left shoulder range of motion with positive Neer and Hawkins tests. *Id*. Plaintiff also exhibited 4/5 strength in the left shoulder and knee with an antalgic gait. *Id*. On September 11, 2020, she opined Plaintiff was limited to "[n]o heavy lifting pushing, pulling, driving of bus, operation of machinery, no kneeling crawling climbing bending. Weight limit less than 10 pounds." *Id*. at 625.

In May 2021, Dr. Daley documented positive muscle spasm and muscle tenderness to palpation of the cervical and lumbar paravertebral muscles with positive cervical compression and straight leg raising tests; painful left knee range of motion with tenderness to palpation over the medial joint line on the left side; painful left shoulder range of motion with positive Neer and Hawkins tests; and 4/5 strength in the left shoulder and knee with an antalgic gait. *Id*. at 640. On May 21, 2021, she opined that Plaintiff could lift less than 10 pounds and could perform no heavy lifting, pulling, driving of buses, operation of machinery, kneeling, crawling, climbing, or bending. *Id*. at 641.

*Michael Hearns, M.D. (04/09/2020)*

At the April 9, 2020 examination, Plaintiff presented to Micheal Hearns, M.D. with no edema in her extremities, a range of motion with limited extension to 5 degrees, flexion to 90 degrees, deep tendon reflexes ½ in the upper and lower extremities, and motor exam in the 4/5 upper and lower extremities. *Id*. at 615-16. Dr. Hearns found Plaintiff limited in lifting, pushing, pulling, standing, walking, turning, bending, and stooping, and could lift 5 to 10 pounds. *Id*. at 616. He ultimately opined that Plaintiff had a temporary total disability. *Id*. at 617.

**HEARING TESTIMONY**

Plaintiff's Testimony

Plaintiff testified at her hearing before the ALJ on May 14, 2024. Admin. R. at 77. Plaintiff previously worked as a bus driver. *Id*. at 83-84. Plaintiff testified to the following in pertinent part: she has pain in her neck that is triggered by looking down at her phone, lying down, and sitting. *Id*. at 84-85. Her pain extends to her lower back, shoulders, arms, and hands. *Id*. She testified that she may feel a numbness in her arm when she's holding things for too long and there are times she has a "little hard time" getting her arm over her head. *Id*. at 86. She testified that can walk for 10 to 15 minutes before needing to sit and rest due to pain. *Id*. at 88. She will lie down to rest for up to 15 minutes approximately 2 to 3 times per day. *Id*. at 89. She will elevate her legs for 30 minutes approximately 4 to 5 times per week. *Id*. at 91. She has used a cane on and off since March 2019 to maintain balance. *Id*. at 92. She also testified that she may feel a numbness in her arm when she's holding things for too

long and there are times she has a "little hard time" getting her arm over her head. *Id*. at 86.

Vocational Expert Testimony

Vocational expert ("VE") Kenneth Smith reviewed the evidence in the record and listened to Plaintiff's testimony. Admin. R. at 97. The VE classified Plaintiff's past work as follows: "Driver," a medium exertional occupation with an SVP of 3. *Id*. at 98. The ALJ posed a hypothetical to the VE involving light work, an individual that can never climb ladders, ropes, or scaffolds, occasionally climb ramps and stairs, occasionally balance, stoop, crouch, crawl, and kneel, cannot operate foot pedals with the left lower extremity and cannot work at unprotected heights or around dangerous machinery, but can use the right upper extremity for frequent handling, grasping, and reaching in all directions. *Id.* at 103. The VE testified that hypothetical individual would be able to work as a housekeeping cleaner (DOT 323.687-014), cafeteria attendant (DOT 311.677-010), and electrical accessories assembler (DOT 729.687-010). *Id*. at 104. A typical employer would tolerate off-task time of up to 10 percent and no more than 1 absence per month. *Id.* at 100.

## RELEVANT LAW

I. Regulatory Framework

The Social Security Regulations provide a five-step "sequential" evaluation process to be used by an ALJ to determine whether a claimant has established he or she is disabled. If at any step of the sequential evaluation the ALJ determines a claimant is or is not disabled, the ALJ concludes the inquiry and does not evaluate

the next step. 20 C.F.R. § 416.920(a)(4).

The first step requires the ALJ to determine whether the claimant is engaged in "substantial gainful activity" ("SGA"). If the claimant is engaged in SGA, then he or she is not deemed disabled and the ALJ's inquiry ends. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). Step two requires the ALJ to evaluate whether the claimant's alleged impairments are medically severe. *See id*. at 1237. If the claimant's impairments are found to be medically severe, then the ALJ is to proceed to step three. *Id.*. In the third step, the ALJ must decide if any of the claimant's proffered impairments, individually or in combination, "meets or equals" any of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. *Flemming v. Comm'r of Soc. Sec.*, 655 F. App'x 673, 676 (11th Cir. 2015). If so, the ALJ proceeds to the fourth step. Step four requires the ALJ to undertake a two-part analysis. *Phillips*, 357 F.3d at 1238. First, the ALJ must assess the claimant's residual functional capacity ("RFC"). *Id*. Second, based on claimant's RFC, the ALJ must determine whether the claimant can return to any "past relevant work." *Id*. Lastly, the fifth step, in which the claimant no longer bears the burden, requires the ALJ to determine whether, given the claimant's age, education, work experience, and RFC, the claimant can perform any work. *Id.* at 1239; *see also Id*. at 1241 n.10. Essentially, during this step, the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform. *Id.* at 1239. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. *Id*. If the claimant cannot make the adjustment to other

work, the ALJ will determine that the claimant is disabled. *Id.*

## II. Standard of Review

Federal courts reviewing a social security appeal are to employ "a deferential reconsideration of the findings of fact and [an] exacting examination of the conclusions of law." *Williams v. Astrue*, 416 F. App'x 861, 862 (11th Cir. 2011). This inquiry is governed by the "substantial evidence" standard, which provides the

> Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the review finds that the evidence preponderates against the Commissioner's decision.

*Kieser v. Barnhart*, 222 F. Supp. 2d 1298, 1305 (M.D. Fla. 2002) (citations omitted).

The Supreme Court of the United States has explained that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. NLRB*, 229, 59 S. Ct. 206, 206 (1938)). Importantly, the reviewing court is prohibited from reweighing evidence already considered by the ALJ. *See Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014) ("[The reviewing Court] may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.").

Despite this deferential standard, the ALJ's conclusions of law are not afforded the same presumption of validity. *Williams*, 416 F. App'x at 862. Rather, the ALJ's

legal conclusions are reviewed *de novo*. *See Hargress v. Comm'r of Soc. Sec.*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018).

When an ALJ's persuasiveness determination as to a medical opinion is challenged, the "ALJ's persuasiveness determination will be upheld as long as the reviewing court can engage in 'a meaningful review and determine whether substantial evidence supports the ALJ's determination.'" *Maxwell v. Bisignano*, No. 24-cv-2499, 2026 U.S. Dist. LEXIS 70013, at *8 (M.D. Fla. Mar. 30, 2026) (citing *Coleman v. Comm'r of Soc. Sec.*, 2026 U.S. Dist. LEXIS 13335, 2026 WL 191806, at *6 (M.D. Fla. Jan. 26, 2026)).

Finally, the Eleventh Circuit articulated that the harmless error rule applies in social security appeals. *See Pons v. Comm'r of Soc. Sec.*, No. 21-13028**,** 2022 U.S. App. LEXIS 11085, at *1-2 (11th Cir. 2022). "If the ALJ commits an error that does not affect the outcome, it's harmless and doesn't require reversal or remand." *Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 793 (11th Cir. 2019).

III. Legal Standard

As noted above, the ALJ's task at step four is to determine a claimant's RFC and her ability to engage in her relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To do so, the ALJ must decide, given all the pertinent evidence before her, what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. *Maxwell*, 2026 U.S. Dist. LEXIS 70013, at *5. In rendering this determination, an ALJ must consider all medical opinions in a claimant's case record, together with the other relevant evidence. *Id*. (citing *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir.

2015)).

A medical opinion is a statement from a physician or other acceptable medical source concerning what a claimant can still do notwithstanding her impairments; whether the claimant's capacity to perform various work activities is diminished; and whether the claimant can see, hear, or use her other senses or adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2).

The ALJ determines the persuasiveness of a medical opinion. 20 C.F.R. § 416.920c. ALJs evaluate persuasiveness based on the following five factors: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 416.920c(a)-(c). The two most important factors for determining the persuasiveness of medical opinions are consistency and supportability. *Bonilla v. Saul*, No. 19-CV-25323, 2020 WL 9048787, at *4 (S.D. Fla. Oct. 23, 2020). The consistency factor looks at whether the medical opinion is consistent with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 416.920c(c)(2). The supportability factor looks at whether the medical opinion is supported by relevant objective medical evidence and the source's explanation of her opinion. *Id.* at § 416.920c(c)(1). While the ALJ must articulate how she considered medical opinions from all medical sources, the ALJ need only explain her consideration of the supportability and consistency factors. *Bonilla*, 2020 WL 9048787, at *5; 20 C.F.R. § 416.920c(b)(2).

In addressing the supportability and consistency factors, an ALJ need not employ any "magic words" or explicitly use the terms "supportability" and

"consistency." *See e.g.*, *Davis v. Comm'r of Soc. Sec.*, No. 24-10771, 2025 WL 1123853, at *5 (11th Cir. 2025); *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1276 n.14 (11th Cir. 2024). An ALJ also need not set forth the basis for her supportability and consistency findings in the same part of her decision as the rest of her persuasiveness discussion. *See Roussin v. Comm'r of Soc. Sec.*, 2021 WL 6205948, at *9 (M.D. Fla. Dec. 16, 2021) (finding "that the ALJ did not err in broadly referencing the general findings that he determined to be inconsistent with the opinion [at issue] because the ALJ had thoroughly discussed the findings of [the claimant's] treating providers earlier in the same decision"), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 525, 2022 WL 19698 (M.D. Fla. Jan. 3, 2022) (alterations in the original). Instead, an ALJ need only state in her decision with at least some measure of clarity the grounds why she assigned weight to medical opinions or the reasons why she discounted them. *See Raper*, 89 F.4th at 1276 n.14 (collecting cases). The Court may uphold an ALJ's decision when read as a whole, the decision sufficiently articulates how the ALJ determined whether the supportability and consistency factors were met. *Id*. at 1276 (first citing *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004); then citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)).

Further, "there is no requirement that an ALJ must refer to every piece of evidence in his decision, so long as his decision is not a broad rejection of the claimant's impairments, and the decision enables a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *See Varriale v. Frank Bisignano Comm'r of Soc. Sec.*, No. 24-cv-757, 2025 U.S. Dist. LEXIS 182502,

at *4 (M.D. Fla. Sept. 17, 2025) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)).

**DISCUSSION**

The ALJ found that Plaintiff has the residual functional capacity to perform "light work" with some limitations. Admin R. at 21. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R 416.967(b).

Plaintiff argues that the ALJ's opinion is not supported by substantial evidence because of two errors: first, that the ALJ failed to properly evaluate the opinions of Lisa Daley, M.D., and second, that the ALJ failed to evaluate at all the medical opinion of Michael Hearns, M.D. Pl. Mot. at 1. Specifically, Plaintiff contends that the ALJ did not properly evaluate Dr. Daley or Dr. Hearns' findings that Plaintiff could only lift less than ten (10) pounds. Pl. Mot. at 6, 12. In opposition, Defendant argues that substantial evidence supports the ALJ's evaluation of the medical opinion evidence under the applicable regulations. Def. Mot. at 6. With respect to both alleged errors, Plaintiff has failed to establish that the errors require a reversal.

<u>Dr. Lisa Daley</u>

The ALJ stated that she found "the many opinions of Dr. Daley . . . partially persuasive" and that Dr. Daley's opinions have been taken into account in her residual capacity finding. Admin. R. at 26. In her decision, the ALJ articulated that the "opinions are from 2019 and 2020 and pertain to that time period, and they show

that the claimant's conditions have improved over time." *Id.* The ALJ then cited the following opinions from Dr. Daley:

> For instance, on November[1] 7, 2020, Dr. Daley opined that the claimant was limited in lifting, pushing, pulling, carrying, sitting, standing, walking, climbing, kneeling, bending, reaching and repetitive motion, with a weight limit of less than 10 pounds and no operation of a van (bus) at this time (Exhibit 7F at 21). The claimant was advised to restart physical therapy, and by May 15, 2020, Dr. Daley opined that the claimant was limited in lifting, standing, walking, climbing, kneeling, bending, reaching, and repetitive motion, and could lift less than 10 pounds (Exhibit 7F at 13). By May 21, 2021, Dr. Daley opined that the claimant was restricted to no heavy lifting, pushing, pulling, bus driving, operation of machinery, kneeling, crawling, climbing and bending, and could lift less than 10 pounds (Exhibit 7F at 32).

Admin. R. at 26.

Plaintiff argues that the ALJ did not explain how she considered the supportability and consistency regulatory factors to determine Dr. Daley's opinions are only partially persuasive. Pl. Mot. at 5. The Eleventh Circuit has made clear that "there are no magic words to state with particularity the weight given to medical opinions or the reasons for discounting them. What matters is whether the ALJ states with at least some measure of clarity the grounds for his or her decision." *Raper*, 89 F.4th at 1276 n.14 (citations omitted). An ALJ may satisfy her obligation to discuss consistency, even if her consistency evaluation is implicit. *See Vachon*, 2022 WL 458604, at *6 (M.D. Fla. Feb. 15, 2022). In *Vachon*, the court found substantial evidence supported the ALJ's implicit consistency evaluation where the ALJ laid out a timeline of how the claimant's treatment notes reflected improvement over time.

[1] The ALJ stated November 7, 2020, when citing to Dr. Daley's February 7, 2020, opinion. *See* Admin. R. at 630.

*Id*. at *15-17. In *Vachon*, Plaintiff argued that that the ALJ failed to discuss the persuasiveness of two prescriptions for a walker written by treating physicians and therefore the ALJ's RFC without limitations requiring Plaintiff to use a walker was not supported by substantial evidence. *Id.* at *11. The Court found the ALJ satisfied her obligation to discuss the prescriptions' consistency when she acknowledged the evidence included that Plaintiff was prescribed a walker in 2017 but then continued to cite ample evidence in the record throughout 2018 showing Plaintiff's gait was normal, improved pain, and ambulating without an assistive device. *Id*. at *15-17.

Like the ALJ affirmed in *Raper*, ALJ Bernasconi outlined her evaluation of the objective medical evidence in the "immediately preceding paragraphs" to her decision as to the persuasiveness of the medical opinions. 89 F.4th at 1276. The ALJ then articulates that Dr. Daley's opinions "are from 2019 and 2020 and **<u>pertain to that time period</u>**, and they show that claimant's conditions have improved over time."[2] Admin. R. at 26 (emphasis added). In the preceding paragraphs the ALJ walks through the evidence on which her RFC determination is based, which includes medical records ranging from 2019 to 2024. *Id.* at 24-26. Particularly, the ALJ discusses June 2022 records where John L. Xethalis, M.D. opined that Plaintiff's weight lifting limit was less than 10 pounds where an examination showed she had a antalgic gait and pain on range of motion, but then four days later Dr. Xethalis found that Plaintiff "ambulated with a normal gait, did not use an assistive device, and had normal range of motion in her cervical and lumbar spines and left shoulder. . . . The

[2] The Undersigned notes that despite stating the relevant range was from 2019-2020, the ALJ cites Dr. Daley's opinions from 2020 to 2021. Admin R. at 26.

claimant had normal sensation and 5/5 strength in her upper and lower extremities." *Id.* at 24 (citing *Id.* Ex. 11-F).

Thus, when read as a whole, the ALJ's decision sufficiently articulates how Dr. Daley's opinions with respect to Plaintiff's limitations were inconsistent with later records closer in time. *See Raper*, 89 F.4th at 1275-76 (first citing *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004); then citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). Substantial evidence supports the ALJ's implicit consistency evaluation where the ALJ laid out a timeline of how the record reflects Plaintiff's strength, range of motion, and other conditions improved over time. *See Vachon*, 2022 WL 458604, at *15-17.

However, the ALJ did not sufficiently articulate a supportability analysis with respect to Dr. Daley's opinions. The Undersigned suspects that the ALJ did consider the specific Dr. Daley opinions she cited as being supported by medical evidence, as the ALJ took them into account in her RFC finding and cited them throughout her opinion. Admin R. 24-26. However, the ALJ is obligated to discuss supportability in a meaningful way to allow review of her decision. *See Coleman*, 2026 WL 191806, at *6. The ALJ did not sufficiently articulate to what extent she found that relevant medical evidence and supporting explanations indicated Dr. Daley's opinions should be considered persuasive under 20 C.F.R. § 416.920c(c)(2). Thus, the ALJ erred when she did not engage in any discussion indicating whether she found Dr. Daley's opinions on Plaintiff's lifting limits were supported or unsupported by her own medical records.

Dr. Michael Hearns

The ALJ's opinion makes no direct reference to the opinions of Dr. Michael Hearns. However, in her decision, the ALJ articulated that the "[w]ith respect to the opinions of Dr. Daley, Dr. Friedman, Dr. Landis, and other providers and Worker's Compensation doctors who claim that the claimant is disabled and/or has a percentage of disability . . . those opinions are not persuasive as the issue of disability is reserved to the Commissioner of Social Security, and Workers Compensation uses a different standard for determining disability than the Social Security Administration (Exhibits 7F; 14F; 16F)." Admin. R. at 26.

Plaintiff takes issue with the absence of an evaluation from the ALJ on Dr. Hearns' April 9, 2020 opinion that found Plaintiff limited in lifting, pushing, pulling, standing, walking, turning, bending, and stooping, and could lift 5 to 10 pounds. Pl. Mot. at 12. Dr. Hearns' April 9, 2020 opinion also found Plaintiff had a "temporary total disability." Admin. R. at 616.

As the ALJ correctly noted, she was not bound to accept disability determinations relying on other agencies' disability standards differing from the Social Security Administration's standards. *See Chait v. Comm'r of the Soc. Sec. Admin.*, No. 23-cv-400, 2024 WL 3534098, at *7 (M.D. Fla. July 25, 2024) (citing 20 C.F.R. § 404.1504). Thus, for a Social Security determination, an ALJ may ignore or disregard a physician's conclusions as to a claimant's disability made in the context of a workers' compensation determination. *See Smith v. Colvin*, No. 15-23010-CIV, 2016 U.S. Dist. LEXIS 131347, at *26-27 (S.D. Fla. Sept. 26, 2016) (citing *Rose v.*

*Chater*, No. CIV. A. 94-4421, 1995 WL 365404, at *6 (E.D. Pa. June 15, 1995)). However, "even though [plaintiff's] treating physicians' opinions and reports may have been originally provided in connection with her worker's compensation claim . . . and are not binding, the ALJ must give their opinions and reports about disability great weight or sufficiently explain the good cause grounds to not do so." *Id.* at *29. Thus, the ALJ should have performed the supportability and consistency factor analysis with respect to Dr. Hearns' medical opinion even if his examination was conducted in the workers' compensation context. *See Larue v. Kijakazi*, No. 22-CV-61236, 2023 WL 2562649, at *5 (S.D. Fla. Feb. 28, 2023), *report and recommendation adopted*, No. 22-61236-CIV, 2023 WL 2560903 (S.D. Fla. Mar. 17, 2023). Therefore, the ALJ erred by not articulating her evaluation of Dr. Hearn's April 9, 2020, opinion.

Harmless Error

The gravamen of Plaintiff's argument for remand for further agency proceedings is that by failing to evaluate Dr. Daley and Dr. Hearns' opinions on Plaintiff's lifting limitations from 2020 and 2021, the ALJ failed to consider the record as a whole and ensure her RFC decision was supported by substantial evidence. Pl. Mot. at 12. Plaintiff contends the ALJ's error was not harmless because she did not properly consider opinions that are in direct contrast with the "light work" RFC. *Id.* For the aforementioned reasons, the Court finds that the ALJ's articulation of her analysis of Dr. Daley and Dr. Hearns' opinions falls short of what is required by the Social Security Regulations. However, the Court finds the ALJ's error was harmless.

If an ALJ incorrectly applies the Social Security Regulations, the decision will

still stand if it results in harmless error. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). Harmless error occurs when the correct application of the regulations would not contradict the ALJ's ultimate findings. *Id*; *see also Whitten v. Soc. Sec. Admin. Comm'r*, 778 F. App'x 791, 793 (11th Cir. 2019) ("If the ALJ commits an error that does not affect the outcome, it's harmless and doesn't require reversal or remand."). An ALJ's failure to credit a medical opinion may amount to harmless error in a social security appeal. *See Pons*, 2022 WL 1214133, at *1-2. "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *See Varriale*, 2025 U.S. Dist. LEXIS 182502, at *8 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

ALJ Bernasconi found, after careful consideration of the entire record, that Plaintiff has the residual functional capacity to perform light work. Admin. R. at 21. The ALJ found that the objective medical evidence and the administrative record as a whole do not support Plaintiff's testimony regarding disability. *Id.* at 22. To the extent the ALJ determined that the Plaintiff has medically determinable impairments, those were taken into account by limiting the claimant to light exertional work with postural limitations and height and machinery restrictions. *Id.* The ALJ noted that she "considered all of the evidence in assessing the claimant's residual functional capacity (in particular the medical records from 1F-16F). . . ." *Id.* Exhibits 7-F and 14-F include Dr. Daley and Dr. Hearns' opinions and clinical notes from examining Plaintiff. *Id.* at 614-17, 625-32, 1027-36. The ALJ found that "the

clinical notes do not support a finding that the claimant is unable to perform any work in the national economy." Admin R. at 22. The ALJ then identified the evidence in the record supporting her findings. *Id.* at 23-65. The ALJ pointed to records from John L. Xethalis, M.D. whose assessment of Plaintiff included a review of Dr. Hearns' April 9, 2020 evaluation report. *Id.* at 24 (citing Ex. 11-F); *Id.* at 733. The ALJ specifically pointed to medical records from Dr. Daley. *Id.* (citing Ex 7-F at 3, 9, 11, 13, 20, 21, 31, 32, 33). The ALJ **explicitly considered** Dr. Daley's opinions that in May 2020, November 2020, and May 2021, Plaintiff had a lifting limitation of less than ten (10) pounds and stated that they had been taken into account in her RFC determination. *See id.* at 26. The ALJ not articulating her consistency or supportability analysis of Dr. Daley's opinions does not change that the ALJ found the medical evidence reflects that Plaintiff's strength, range of motion, and other conditions improved over time to make her capable of performing light work with postural and environmental limitations. *See e.g., Vachon*, 2022 WL 458604, at *17 (finding the ALJ's failure to consider medical opinions harmless where the ALJ implicitly found that the medical opinions inconsistent with medical evidence of record and provided ample record citations); *Maxwell*, 2026 U.S. Dist. LEXIS 70013, at *13 ("even assuming the ALJ's persuasiveness discussion is lacking, the Plaintiff does not establish how the ALJ's allegedly deficient analysis constitutes anything more than harmless error"); *Varriale*, 2025 U.S. Dist. LEXIS 182502, at *11-12 ("In sum, the Court finds that the ALJ comprehensively analyzed consistency, but the ALJ's lack of a supportability discussion was harmless error").

For similar reasons, the Court does not find Plaintiff was harmed if the ALJ did not consider an even earlier opinion from Dr. Hearns from April 9, 2020, finding Plaintiff limited in lifting, pushing, pulling, standing, walking, turning, bending, and stooping, and could lift 5 to 10 pounds. Pl. Mot. at 12. Especially where Dr. Hearns opined that Plaintiff had "**temporary** total disability" Admin R. at 616 (emphasis added). Nor does the Court find that the ALJ failing to assess Dr. Hearns' opinion is itself a harm necessitating remand. *See Maxwell*, 2026 U.S. Dist. LEXIS 70013, at *11 n.6. Considering Dr. Hearns' opinion is substantially similar to the opinions on Plaintiff's lifting limitations from Dr. Daley that the ALJ did consider in her RFC, it's unlikely his opinion "impact[ed] the outcome of the ALJ's decision." *Dennis N. v. Bisignano*, No. 24-CV-828, 2025 U.S. Dist. LEXIS 154512, at *11 (M.D. Ala. July 22, 2025).

To the extent Plaintiff cites other evidence of record that she contends supports a different RFC determination than the one made by ALJ Bernasconi, Pl. Mot. at 9-10, the Court finds that the evidence does not require remand. "In reviewing an ALJ's decision, [the Court] may not decide the facts anew, make credibility determination[s], or re-weigh the evidence, and [the Court] must affirm the ALJ's findings if they are supported by substantial evidence, even if the evidence preponderates against them." *See Vachon*, 2022 WL 458604, at *23 (alterations in the original) (citing *Jones v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 507, 508 (11th Cir. 2017)). It is the ALJ's job to evaluate and weigh evidence and to resolve any conflicts in the record, not this reviewing Court's. *See id.*

Plaintiff also takes issue with the ALJ not specifically addressing the portion of Dr. Daley and Dr. Hearns' opinions regarding Plaintiff's lifting limitation that she asserts are in direct conflict with the RFC. Pl. Mot. at 12. However, an ALJ not addressing a conflicting opinion to the RFC generally rises to reversible error when the ALJ has determined that opinion is persuasive—which is not the case here. *See e.g., Weidlich v. Comm'r of Soc. Sec.*, No. 22-13309, 2023 U.S. App. LEXIS 30824, at *6 (11th Cir. Nov. 20, 2023); *Gary-Lowe v. O'Malley*, No. 22-CV-22379, 2024 WL 1178658, at *7 (S.D. Fla. Feb. 12, 2024); *Lombardi v. Bisignano*, No. 24-80311-CIV, 2025 U.S. Dist. LEXIS 258074, at *12 (S.D. Fla. Sept. 29, 2025); *See Larue*, 2023 WL 2562649, at *5. Further, nothing in the opinions from Dr. Daley or Dr. Hearns that Plaintiff puts at issue directly conflicts with the ALJ's determination that as of August 1, 2024, Plaintiff can perform work that involves lifting up to 20 pounds.

## CONCLUSION

Because the ALJ's decision is supported by substantial evidence and any error by the ALJ is harmless to Plaintiff, it is hereby **RECOMENDED** Plaintiff Cristie Otero's Motion for Summary Judgment, ("Plaintiff's Motion"), [ECF No. 15], be **DENIED**. It is further **RECOMMENDED** that Defendant Frank Bisignano Commissioner of Social Security's Motion for Summary Judgment, ("Defendant's Motion"), [ECF No. 17], be **GRANTED**.

## OBJECTIONS

"Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id*. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; S.D. Fla. Mag. R. 4(a).

**Respectfully Submitted,** in Chambers in Miami, Florida on this 10th day of August, 2026.

Enjoliqué A Lett

**ENJOLIQUÉ A. LETT**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record